Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/26/2019 09:06 AM CST

- 951 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

In re Interest of Cole J., a child
under 18 years of age.
State of Nebraska, appellee,
v. Cole J., appellant.

___ N.W.2d ___

Filed February 26, 2019.    No. A-18-260.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.
3. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.
4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
5. **Rules of Evidence: Hearsay: Proof.** Hearsay is an out-of-court statement made by a human declarant that is offered in evidence to prove the truth of the matter asserted.
6. **Rules of Evidence: Hearsay.** Generally, hearsay is inadmissible except as provided by a recognized exception to the rule against hearsay.
7. **Rules of Evidence: Hearsay: Proof.** The party seeking to admit a business record under Neb. Rev. Stat. § 27-803(5)(a) (Reissue 2016) bears the burden of establishing foundation under a three-part test. First, the proponent must establish that the activity recorded is of a type that regularly occurs in the course of the business' day-to-day activities.

- 952 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

Second, the proponent must establish that the record was made as part of a regular business practice at or near the time of the event recorded. Third, the proponent must authenticate the record by a custodian or other qualified witness.

8. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

9. **Juvenile Courts: Jurisdiction: Proof.** At the adjudication stage, in order for a juvenile court to assume jurisdiction of a minor under Neb. Rev. Stat. § 43-247(3)(b) (Reissue 2016), the State must prove the allegations of the petition beyond a reasonable doubt.

10. **Juvenile Courts: Minors: Jurisdiction.** Under Neb. Rev. Stat. § 43-247(3)(b) (Reissue 2016), when a juvenile is habitually truant, he or she may be adjudicated as such.

11. **Juvenile Courts: Public Officers and Employees: Minors.** Prior to filing a petition alleging a juvenile is habitually truant, the county attorney shall make reasonable efforts to refer the juvenile and his or her family to community-based resources that address the juvenile's behaviors.

12. **Schools and School Districts.** Under Neb. Rev. Stat. § 79-209(2) (Reissue 2014), all schools are required to have a policy that states the number of absences after which the school shall render services to address a student's barriers to attendance.

Appeal from the Separate Juvenile Court of Lancaster County: Linda S. Porter, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Mark D. Carraher for appellant.

Pat Condon, Lancaster County Attorney, Margeaux K. Fox, and John M. Ward for appellee.

Pirtle, Bishop, and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Cole J. appeals from his adjudication as a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(b) (Reissue 2016) following a trial in the separate juvenile court of Lancaster

- 953 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

County. On appeal, Cole alleges the court erred in admitting evidence over his objections and relying on insufficient evidence when it found he was habitually truant. For the reasons that follow, we affirm.

BACKGROUND

On November 29, 2016, the State filed a truancy petition, alleging that Cole was habitually truant from school between August 24 and November 21, 2016. The State sought Cole's adjudication as a juvenile defined by § 43-247(3)(b). Cole, born in January 2001, was 15 years old when the action commenced. He lived with his mother, Laurel J., in Lincoln, Nebraska, where he attended high school.

An adjudication hearing was held on February 9, 2018. The State called two witnesses who both worked at Cole's high school: an attendance technician, Kaley Brewer, and a student advocate and truancy diversion coordinator, Brandon Prater. The court also admitted three exhibits.

According to Brewer, when students at Cole's high school miss a class period without an excuse, their teachers mark them truant and their parents automatically receive a telephone call at the end of the day. The school ordinarily sends notification letters to parents each time a student misses 5, 10, or 15 days. After a student misses 10 days of school, the school attempts to schedule a collaborative plan meeting with the student and his or her parents. When a student misses 20 days of school, the office of the Lancaster County Attorney (County Attorney) is notified.

Cole was enrolled in seven 1-hour periods each school day. From August 24 through November 21, 2016, Cole was truant for 158 1-hour periods, which equates to just over 22 school days. Due to Cole's absences, the school held a collaborative plan meeting on November 11. Brewer, along with a school administrator and a school counselor, attended this meeting with Cole and outlined actions to be taken. Laurel did not attend the meeting. Brewer encouraged Cole to talk with the

- 954 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

person providing him transportation in the morning about getting him to school on time. A collaborative plan document was created in the meeting which identified only the need for the family to work with community services in order to improve attendance. The plan of action devised was for Brewer to work with Prater about enrolling Cole in the truancy diversion program.

Because Laurel did not attend the collaborative plan meeting, Brewer sent home with Cole a letter from the County Attorney. This letter outlined community-based resources that were available to the family. Specifically, the letter referred to the "'Lancaster County Resource Guide'" and provided a web address at which it could be reviewed. The letter also provided contact information for the "Lincoln/Lancaster County Human Services Office." The letter closed by stating the County Attorney's hope that referrals to such programs would assist Cole and his family in addressing his truancy issues. Brewer requested that Cole have his mother, Laurel, initial the collaborative plan document to acknowledge that she had received the letter and return a copy to the school, but this never occurred.

Cole was subsequently referred to the County Attorney for a truancy filing, and the County Attorney determined that Cole should enroll in the school's truancy diversion program. Despite the plan to place Cole in the diversion program, the petition herein was filed on November 29, 2016.

The truancy diversion program met every 2 weeks and connected students with a student advocate such as Prater. Students and parents are made aware of the program's expectations through an initial truancy diversion meeting, and students sign a contract to participate in the program. Following the filing of the petition, Cole and Laurel signed a contract for the program. However, Cole continued to miss classes and was ultimately removed from the truancy diversion program.

Over Cole's objection, the court admitted exhibit 3, which showed that telephone messages were left by Brewer for Laurel

- 955 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

on October 20 and 25, 2016, attempting to schedule the collaborative plan meeting. The exhibit also recites that Laurel did call the school on October 31, seeking to reschedule the meeting. The next day, Brewer called back, but received no answer. Brewer again left a voicemail. Brewer also left Laurel a telephone message after she did not attend the collaborative plan meeting on November 11. The court noted that the evidence showed documented efforts by the school to notify Laurel of the collaborative plan meeting and to follow up with her when she did not show up to the meeting.

The court held that the absence of Laurel at the collaborative plan meeting was not an absolute defense to the truancy filing, especially because the school repeatedly attempted to contact Laurel and notify her of the meeting. Thus, the court held the school's efforts satisfied the requirements of Neb. Rev. Stat. § 79-209 (Reissue 2014) and adjudicated Cole as a juvenile within the meaning of § 43-247(3)(b).

Following the adjudication hearing, the court took the matter under advisement and issued its written decision on February 21, 2018. The court found that Cole had been absent for 22 days during a roughly 3-month period from August 24 through November 21, 2016. Thus, the court held that Cole was a juvenile who was habitually truant as defined by § 43-347(3)(b).

In its order, the court noted that it allowed evidence of Cole's enrollment in a truancy diversion program after November 21, 2016, only insofar as determining whether the court should still exercise jurisdiction since the alleged period of truancy occurred almost 1½ years earlier.

Cole now appeals.

ASSIGNMENTS OF ERROR

Cole assigns the juvenile court erred in (1) receiving exhibit 3 over hearsay and foundation objections, (2) receiving evidence of actions taken outside the time period alleged in the petition, and (3) relying on insufficient evidence to adjudicate him.

- 956 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Samantha C.*, 287 Neb. 644, 843 N.W.2d 665 (2014).

[2-4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Smith, supra*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## ANALYSIS

### Admission of Exhibit 3

Cole contends that the juvenile court erred in admitting exhibit 3, a log of communications between the school and Cole or Laurel, over his objections based on hearsay and foundation. In response, the State contends that the communication log was properly admitted under the business records exception to the hearsay rule. We agree that exhibit 3 was properly admitted.

[5,6] Hearsay is an out-of-court statement made by a human declarant that is offered in evidence to prove the truth of the matter asserted. *State v. Williams, ante* p. 459, 920 N.W.2d 868 (2018). See, Neb. Rev. Stat. § 27-801 (Reissue 2016); *State v. Baker*, 280 Neb. 752, 789 N.W.2d 702 (2010). Generally, hearsay is inadmissible except as provided by a recognized exception to the rule against hearsay. *State v. Williams, supra*. See Neb. Rev. Stat. §§ 27-802 through 27-804 (Reissue 2016).

- 957 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

One such exception is the business records exception. See § 27-803(5)(b).

[7] The party seeking to admit a business record under § 27-803(5)(a) bears the burden of establishing foundation under a three-part test. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). First, the proponent must establish that the activity recorded is of a type that regularly occurs in the course of the business' day-to-day activities. *Id*. Second, the proponent must establish that the record was made as part of a regular business practice at or near the time of the event recorded. *Id*. Third, the proponent must authenticate the record by a custodian or other qualified witness. *Id*.

In the present case, the State laid sufficient foundation for the admission of exhibit 3 under the hearsay rule's exception for business records. First, the State showed through Brewer's testimony that Cole's high school regularly maintains similar communication logs for all its students and that these records are updated when school personnel communicate with students or their parents. Second, Brewer testified that the record is updated by school personnel at the time when they make contact. Third, the State authenticated the record through Brewer, who was a custodian or qualified witness because she testified that she was one of a handful of people who had access to the communication log, could edit the log, and could print the log. As such, the State laid a proper foundation for the communication log's admission under the business records exception to the hearsay rule.

The concern underlying Cole's objection seems to be that more than one person could edit the log, thus making it unreliable. We note that such a concern may be considered for purposes of the weight to be accorded the evidence, but this concern does not negate the exhibit's admissibility when proper foundation is laid. We also note that the only entries made on the log that relate to Cole's attendance were made by Brewer. There was no indication in Brewer's testimony that the entries

- 958 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

attributed to her had been altered. As such, we cannot find any error by the juvenile court in receiving exhibit 3.

## Evidence Outside Period
### Alleged in Petition

Cole alleges that the court erred in admitting evidence of the County Attorney's efforts outside the period of August 24 to November 21, 2016, which was alleged in the petition. He contends that such evidence was irrelevant and prejudicial. The State argues in response that evidence of Cole's attending a truancy diversion program after November 21 was relevant and not prejudicial. We agree that the evidence outside the petition's time period was relevant and that its admission did not prejudice Cole.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 2016). The juvenile court received evidence of Cole's enrollment in a truancy diversion program after November 21, 2016, solely for the limited purpose of determining whether it was still necessary 15 months after the filing of the petition for the court to exercise jurisdiction over Cole. In addressing this issue, the court stated:

> I agree, and I'm not sure why the County Attorney proceeds in the way they do in these cases when they're filing them — when it's a period of time that's quite some time ago. But I think it goes to the issue of whether the Court should take jurisdiction over a youth on a truancy allegation that's over a year old. So, I'm going to overrule your objection, but I'll indicate I'm aware of what the petition alleges and the State has to prove that — those allegations by proof beyond a reasonable doubt. But, in terms of the issue of whether the Court should take jurisdiction over a youth for truancy, that's, at this point, over a year in the past, I'm going to consider — I'm going

- 959 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

to allow her to adduce evidence about what's transpired since, on the relevance of whether the Court should exercise jurisdiction, if they have proven the allegations given the time frame that those allegations pertain to.

We agree that the posture of the case was complicated by the State's decision to file the case immediately but then place Cole into a diversion program. The juvenile court recognized that the State had the burden to prove the allegations contained in the petition and clearly did not utilize any postpetition evidence against him in determining that the State had met its burden. In essence, the court found that even if the State met its burden, the court could still refuse to adjudicate Cole if the postpetition evidence demonstrated that Cole had become compliant with attending school. Therefore, it is difficult to ascertain how this additional burden prejudiced Cole. We cannot find that the court abused its discretion in receiving postpetition evidence for the stated limited purpose.

Whether the court should exercise jurisdiction over Cole was the central question of the adjudication proceeding. Thus, the evidence was relevant and properly admitted.

### Sufficiency of Evidence

Cole contends that the State failed to meet its burden of proof in two ways. He first argues that there was insufficient evidence to establish that his school documented a true collaborative plan meeting prior to the County Attorney's filing the truancy petition. Second, he claims that there was insufficient evidence to find that the County Attorney had made reasonable efforts to refer the family to community-based resources prior to filing the petition. The bases for his arguments are rooted in the absence of Laurel from the collaborative plan meeting and the school's entrusting Cole to deliver the County Attorney's letter to her. The State argues in response that it introduced evidence upon which the juvenile court could find that the school documented a collaborative plan meeting, that the County Attorney made reasonable efforts to inform Cole

- 960 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

and Laurel of appropriate community resources prior to filing the petition, and that Cole was a habitually truant juvenile. The State also asserted that Laurel's absence at the collaborative plan meeting cannot be a complete defense to Cole's adjudication. For the reasons set forth below, we agree that the State introduced sufficient evidence to support the juvenile court's decision.

[8,9] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016). At the adjudication stage, in order for a juvenile court to assume jurisdiction of a minor under § 43-247(3)(b), the State must prove the allegations of the petition beyond a reasonable doubt. See *In re Interest of Joseph S.*, 13 Neb. App. 636, 698 N.W.2d 212 (2005).

[10,11] Under § 43-247(3)(b), when a juvenile is habitually truant, he or she may be adjudicated as such. Prior to filing a petition alleging a juvenile is habitually truant, the county attorney shall make reasonable efforts to refer the juvenile and his or her family to community-based resources that address the juvenile's behaviors. See Neb. Rev. Stat. § 43-276(2) (Reissue 2016). Failure to describe the efforts required by § 43-276(2) is a defense to adjudication. See, also, § 79-209(3).

[12] Under § 79-209(2), all schools are required to have a policy that states the number of absences after which the school shall render services to address a student's barriers to attendance. Such services shall include, but not be limited to:

> (a) Verbal or written communication by school officials with the person or persons who have legal or actual charge or control of any child; and
> (b) One or more meetings between, at a minimum, a school attendance officer, a school social worker, or a

- 961 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

school administrator or his or her designee, the person who has legal or actual charge or control of the child, and the child, when appropriate, to attempt to address the barriers to attendance. The result of the meeting or meetings shall be to develop a collaborative plan to reduce barriers identified to improve regular attendance.

Failure by the school to document the efforts required by § 79-209(2) is a defense to prosecution under Neb. Rev. Stat. § 79-201 (Reissue 2014) and adjudication for habitual truancy under § 43-247(3)(b).

The central question is whether there was sufficient evidence that Cole's high school and the County Attorney made the statutorily required efforts to address Cole's attendance issues in spite of Laurel's not attending the collaborative plan meeting. At the adjudication hearing, Brewer testified that the school notifies parents of their child's absence by telephone each day that a student misses a class period. She further testified that letters are sent to parents each time that a student misses the equivalent of 5, 10, or 15 school days. Because Cole missed the equivalent of 22 school days, there was evidence that Laurel would have been notified in writing at least three times of Cole's repeated absences and would have received numerous notifications via telephone as well.

Brewer also testified that the school typically schedules a collaborative plan meeting after a student has missed school for 10 days. On November 11, 2016, the school held a collaborative plan meeting which was attended by Cole, Brewer, a school administrator, and a school counselor. Laurel did not attend the meeting, however. The communication log, exhibit 3, shows that Brewer contacted Laurel twice in October to set up the collaborative plan meeting. Laurel then contacted the school on November 1, seeking to reschedule the meeting. However, when Brewer contacted Laurel to set a new date, Laurel did not answer or respond to the voicemail that Brewer left.

- 962 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

When the collaborative plan meeting concluded, Brewer gave Cole a copy of a letter from the County Attorney and directed him to bring it back after his mother initialed it. No initialed copy of the letter was returned to the school, however. The letter referred to the "'Lancaster County Resource Guide'" and provided a web address at which it could be reviewed. The letter also suggested that parents should work closely with their child's school and further recommended that parents contact the "Lincoln/Lancaster County Human Services Office" and provided that office's telephone number.

Cole's first contention, reduced to its essence, is that because school officials failed to obtain Laurel's presence at the collaborative plan meeting, there was no compliance with § 79-209(2). To accept Cole's contention—namely, that Laurel's absence from the collaborative plan meeting is an absolute defense to his adjudication as a habitually truant minor—would allow students' truancies to continue unchecked if their parents simply refuse to show up for a collaborative plan meeting. This is an unworkable interpretation of our laws. Here, the school made reasonable efforts to obtain Laurel's attendance. An attendance report for Cole demonstrates that he was truant for at least one period of school on 36 different days. This would have triggered 36 calls to Laurel. She also would have received at least two letters from the school prior to the scheduling of the meeting. The testimony of Brewer and exhibit 3 demonstrate that repeated efforts were made to contact Laurel by telephone in order to schedule the collaborative meeting and that she responded to at least one of the calls by asking to reschedule the meeting. She did not continue to follow up, however, when Brewer attempted to return her call. Knowing that the meeting remained scheduled on November 11, 2016, she did not appear or make further efforts to reschedule. In its order of adjudication, the juvenile court notes that although present, Laurel did not testify at the adjudication hearing. The record before the juvenile court was sufficient to support the court's

- 963 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

conclusion that the school made sufficient efforts to comply with § 79-209(2) to negate any claim or defense raised by Cole regarding Laurel's absence from the collaborative plan meeting.

Cole's final contention is that the evidence was insufficient to show that the County Attorney made reasonable efforts to refer the family to community-based resources prior to filing the petition. The record demonstrates that the petition was filed November 29, 2016, just 18 days following the collaborative plan meeting. In his brief, Cole acknowledges that we have held that where a County Attorney's resources letter was provided to the child and a parent at the collaborative plan meeting, such efforts were sufficient to meet the requirement of § 43-276(2). See *In re Interest of Hla H.*, 25 Neb. App. 118, 903 N.W.2d 664 (2017). In *In re Interest of Hla*, the issue addressed centered on whether the provision of the letter was sufficient given that the mother of the juvenile could not read English. We found that the record revealed that the county attorney and the school had engaged in a coordinated effort to refer community-based resources to the student and his family, including the services of an interpreter at the collaborative plan meeting and the contact information for the interpreter if further services were needed.

From our record, it appears that the County Attorney's resources letter utilized is essentially identical to the letter utilized in *In re Interest of Hla*. The issue here is whether the provision of the letter to Laurel by way of sending it home with Cole following the collaborative plan meeting constitutes reasonable efforts to refer the family to community-based resources. Cole essentially argues that entrusting him with the letter was not reasonable. He argues the County Attorney, at a minimum, must ensure that the parents receive the letter before their efforts can be deemed reasonable. We agree that the best course of action would have been for the County Attorney to have attempted to directly provide the letter to Laurel in addition to sending it home with Cole.

- 964 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

However, under the circumstances of this case, we cannot say that the decision to have Cole transport the letter home was not reasonable.

We first note that Cole was also given a copy of the collaborative plan and was given specific instructions to provide all of the documents to Laurel, who was to initial the collaborative plan and check the line at the end acknowledging that the letter had been received. She was then supposed to return the initialed plan to school with Cole. It was reasonable to attempt this approach given Laurel's history of being unresponsive to past telephone calls and letters sent by the school. Moreover, school officials knew that Laurel was aware of the November 11, 2016, collaborative plan meeting, because she at one point sought to reschedule it. We note that when Laurel failed to appear for the meeting, Brewer did call and leave a message for her. Therefore, Laurel had reason to inquire of Cole about the meeting's outcome. Following the November 11 meeting, there is nothing in the record that indicates any further contact between the school and Laurel until after the petition was filed. While the burden is on the State to demonstrate reasonable efforts were made to provide Laurel with the community resources information, we note, as did the juvenile court, that Laurel did not testify either that she was unaware of the meeting or that she did not receive the letter sent home with Cole. Brewer testified that she and Prater did have one followup meeting with Cole to see if he had delivered the materials that were sent home with him to his parent. Cole indicated that he no longer had the letter, which appears to have satisfied Brewer that the letter and plan were delivered. In any event, whether provided the documents by Cole or not, the evidence adduced demonstrates that Laurel continued to be unresponsive to Cole's absences from school and the direct communication from the school in response thereto, including those that occurred after the meeting but before the filing of the petition. We cannot find, given Laurel's general unresponsiveness to the school's

- 965 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF COLE J.
Cite as 26 Neb. App. 951

attempts to communicate with her over a period of months, coupled with her knowledge of the collaborative plan meeting, that the efforts of the County Attorney to provide her with the letter to connect her with community resources were not reasonable.

## CONCLUSION

Based on our de novo review of the evidence contained in the record, we hold that the County Attorney met the statutory obligation under § 43-276(2) as applied to the habitual truancy provision of § 43-247(3)(b). We further find the juvenile court properly adjudicated Cole as a juvenile within the meaning of § 43-247(3)(b) for being habitually truant from school.

Affirmed.